## Case No. 7,347.

### The JOHN GRIFFIN.

Circuit Court, E. D. New York. 1871.

## Case No. 7,348.

### The JOHN GRIFFIN.

[4 Ben. 19; 11 Int. Rev. Rec. 63.] [1]

District Court, E. D. New York. Feb., 1870. [2]

B. F. Tracy, U. S. Dist. Atty., for the United States.

F. B. Wilcox, C. Donohue, and J. McGowan, for claimants.

BENEDICT, District Judge. This is a proceeding in rem to enforce the forfeiture of the bark John Griffin for a violation of the 50th section of the act of March 2, 1799. The charge against the vessel is, that in the month of October, 1869, a quantity of cigars of the value of about $5,000, brought in her from a foreign port, were unladen and delivered from her at the port of New York, without a permit from the collector and naval officer, contrary to law.

In support of this charge, one John Albreu, who owned the cigars alleged to have been smuggled, is produced as a witness, and testifies, that in September, 1868, he was in Havana and in Matanzas, at which last named port the bark, John Griffin, was then loading for New York, under the command of William Downey whom he well knew. That he met Downey in Havana and applied to him to smuggle some cigars into New York for him, but no arrangement was then made. That Downey afterwards left Havana and

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 11 Int. Rev. Rec. 63, contains only a partial report.]

[2] [Reversed by the circuit court; case not reported. Decree of the circuit court reversed in 15 Wall. (82 U. S.) 29.]

went to Matanzas and Albreu was informed by a letter—from whom he does not say—that Downey would take his cigars and accordingly he sent them to Matanzas. packed in twenty-two boxes or cases, marked "G. Matanzas," and in three or four days received a letter from Downey, saying they were "shipped all right," whereupon he started for New York by the next steamer.

That afterwards the bark arrived in New York from Matanzas, and he saw Downey and learned from him that his cigars were all right, and arranged with him to be at the corner of Liberty and William streets, at 11 a. m., the next day, to receive them. That at the time and place appointed a carman came with a load of his cigars, enquired for him, and delivered his load to him; whereupon he went to South street and there in an office paid Downey $2.000 on account of the freight;—that he then went back and received the remainder of his cigars in the same way, and again went to the office in South street and paid Downey $1.200 more, being the balance of freight on the cigars, at the rate of $25 per thousand.

That these cigars, which he so received and paid freight on, were the same cigars which he had sent from Havana to Matanzas, to be brought to New York by Downey, and upon their receipt he stored a portion in a room on the fourth floor of 96 Nassau street, corner of Fulton street.

That subsequently officers of the customs seized his papers at his house, and among them the invoice by which these cigars were shipped from Havana to Matanzas, and with it the letter of Downey acknowledging the receipt of them. The cigars at 96 Nassau street were also seized and are now held as forfeited. no duty having been paid on them.

Besides these cigars Albreu says he had a trunk and a barrel which he asked Downey in Matanzas to take to New York for him; that Downey said he would see about it, and the articles were left at Matanzas to be called for, and a day or two after the delivery of the cigars he received the trunk and barrel at his house from an expressman.

This is the substance of the evidence given by Albreu, and it is the testimony of a witness by his own showing an accomplice in the unlawful act charged on Downey. He is also under powerful pressure. caused by seizures of his property, which are pending undisposed of.

His character for truth has been seriously impeached and he is proved to have made statements which conflict with the story he now tells. The prosecution have therefore sought to sustain the testimony of Albreu by confirmatory evidence. and it has been otherwise shown that the cigars seized at 96 Nassau street were there stored by Albreu: that Albreu hired the room on the 20th day of October. 1868. and on that day the bark, John Griffin. Downey being still master, finished discharging a cargo of sugar and molasses which she had brought from Matanzas to New York. Whether any other vessel arrived in New York from Matanzas at or about this time does not appear.

It has also been shown that the boxes or cases. in which the cigars seized were packed, were distinguishable not only by the mark "G. Matanzas" and their numbers, but also, because although they have a general appearance, resembling sugar-boxes, they differ somewhat from the ordinary sugar-box of Cuba in size, and are hided in a different manner. It also appears that Albreu did have in Matanzas twenty-two cases containing cigars, answering to this description, which he desired to smuggle into New York. The invoice by which Albreu says they were shipped from Havana to Matanzas is also put in evidence, and it calls for twenty-two cases cigars similar in character to those seized. marked "G. Matanzas," shipped to Matanzas. September 20th, 1868. It is also admitted by Downey. that he did meet Albreu while his bark was at Matanzas, and was applied to by Albreu to bring some packages, including a trunk, to New York. and that he again met him in New York the day after the arrival of the bark. A witness named Molina. who was in the employ of Albreu, is also called. who swears that twenty-two boxes of cigars were delivered to Albreu, on the corner of Liberty and William, and stored at 96 Nassau street, and that he went with Albreu to South street and saw Albreu pay Downey money in an office there.

The letter which Albreu says he received from Downey, in Havana, after the cigars were sent to Matanzas, and which is shown to be in the handwriting of Downey, and to have been found in Albreu's writing-desk, with the invoice, is also produced. and is as follows: "Matanzas, Sept. 23, 1868. Mr. John Albreu: Dear Sir: Your 22 boxes, trunk and barrel packages are all on board safe. I wish your boxes were all hided the same as all sugar boxes. They are too easily distinguished. but I think they will be all right. Yours, respectfully, W. Downey."

This letter affords to my mind strong corroboration of Albreu's story, and taken in connection with the facts established outside of Albreu's testimony, plainly indicates the vessel here proceeded against. It is true that the letter does not name the bark John Griffin. but it expresses a solicitude which clearly indicates an interest on the part of the master of the John Griffin in the landing of the cigars without detection, and it manifestly relates to the cigars which were stored at 96 Nassau street on the day the John Griffin finished discharging in New York, and. unexplained. would naturally be considered to refer to the vessel. of which the writer was the master, which is the vessel proceeded against.

The effect of the master's letter, as impli-

cating his vessel in this transaction, is, moreover, increased by the explanation of it which is attempted, and the noticeable manner of the witness in giving that explanation. It is in evidence that the letter was shown to the master, soon after its seizure, by the officers of the customs, and he was then charged with having brought the cigars, but he then attempted no explanation of the letter, although he denied the charge.

When examined in chief, as a witness for the claimants, he did not allude to any explanation of the letter, but simply says: "These boxes and trunk and barrel didn't come in the John Griffin, and were never on board of her. Albreu never paid me any money, as he states. No such interview took place at the office in South street. I was never there with Albreu at any time."

Upon cross-examination, however, he says that when applied to by Albreu to take his goods, he refused; that Albreu afterwards told him that he had made arrangements to have his goods go on board a vessel, and wanted him to see that they were on board, and that subsequently a man whom he used to see often, but whose name he does not know, came to him and asked him to look at some goods belonging to Albreu, on a brig in Matanzas; that he thereupon went with him, and found some boxes and a trunk in the poop of a vessel, but did not count the boxes, or notice the name of the vessel, or know any of the officers of the vessel, or whether she was English or American, or what was her name, or where she was bound, or where the boxes were going. He admits that he wrote to Albreu, while in Matanzas—don't recollect what he wrote about—but surmises that the letter in evidence refers to the boxes he saw on the brig. The letter, both body and signature, he says, looks like his handwriting, and he won't say he didn't write it, but he has no recollection of having signed it, and has now no belief as to whether he wrote it or not. Such an explanation of such a letter tends strongly to discredit the evidence of the master giving it, who, it should be remarked, admits that he was engaged in assisting Albreu to smuggle, and being part owner of the vessel here proceeded against, and personally involved in the charge made by the government, is greatly interested in the event of the prosecution.

It is hardly conceivable that a smuggler who had arranged to smuggle a large amount of property in this unknown brig, would deliberately, and without any apparent necessity, provide for a knowledge of the fraud by a third person, bound to New York, and competent to convey information to the officers, and to prove the fraud against him.

It is improbable that Downey, himself a ship-master, would not know the name, or nationality, or destination, of a vessel lying in shore at Matanzas, where he was also loading, and on board of which he claims to have gone to see as to the shipment of some $5,000 of property.

It is difficult to explain the failure to produce the testimony of the man whom Downey says went with him, and who, for anything that appears, could have been found and examined as a witness. It is hard to understand how Downey came to write to Albreu that twenty-two boxes were all on board safe, if, as he swears, he never counted the boxes he saw on the brig. If it be true, as he says, that he never knew (not that he has forgotten) on what vessel the boxes were, nor how many there were, nor where they were bound, nor the name of the master who took them, why do so vain a thing as to see them at all, or why write to Albreu at all? And why regret that they were so hidden as to be easily distinguished, or why think that they would be all right?

The offering of an explanation so unsatisfactory is of itself a strong ground of suspicion, and, with the other facts proved, has convinced me that the statement of Albreu is substantially correct, and that the John Griffin was the vessel referred to in the letter as having the cigars on board. In arriving at this conclusion, I have not overlooked the testimony of the two mates, the cook, and the stevedore who discharged the bark, all of whom, with more or less particularity, deny any knowledge that these cigars were ever on board the vessel; but, as has too often happened in cases of a similar character (see Nelson v. U. S. [Case No. 10,116]; also, The Struggle, 9 Cranch [13 U. S.] 74), the positive statements of persons composing the crew are overborne by the surrounding circumstances, proved by testimony more reliable.

The further evidence of the custom-house inspector, who was charged with the duty of inspecting the discharge of the bark, has also been introduced by the claimants, showing that he saw no such merchandize as those twenty-two boxes landed from this vessel, or on board of her; but, at the same time, he says, that, although he inspected her discharge, in the ordinary way of inspecting such cargoes, he was not present much of the time, and that all he really knows is, that he saw some sugar on board of her, and, at night, saw some sugar on the dock by her. For aught that he saw, a much larger quantity of merchandize could have been landed without detection. It would, certainly, appear to be desirable that the revenue laws, and their administration, should be such as would enable the government to have some accurate knowledge as to what cargo is actually landed from vessels arriving from foreign ports, but the government assumes no obligations toward shipowners to prevent fraudulent discharges of cargo, and the liability of the vessel is the same, whether the officers of the customs do or do not prevent the illegal landing of cargo.

It is only necessary to add that the other

owners of this vessel have placed themselves upon the stand, and show that they had no knowledge of the landing of any such cigars, and received no freight from the transportation of any such merchandize on the voyage in question, which evidence, while it absolves them from complicity with their master, is not inconsistent with his guilt. My conclusion, therefore, is, that upon the evidence as it stands, it must be held that these cigars were transported from Matanzas to New York in the bark John Griffin, and illegally landed, from the vessel, without a permit, and being of a value exceeding $400, the vessel thereby becomes forfeited to the United States. Let a decree be entered accordingly.